# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

BOUNLAP MATMANIVONG, )
individually and on behalf of a class, )
                                               )
                    Plaintiff, )
                                               )
         vs. )
                                                 )
NATIONAL CREDITORS CONNECTION, INC., )
                                                 )
                  Defendant. )

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff brings this action to secure redress from unlawful credit and collection practices engaged in by defendant. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

## VENUE AND JURISDICTION

2. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue and personal jurisdiction in this District are proper because:

    a. Defendant's collection communications were received by plaintiff within this District;

    b. Defendant does or transacts business within this District.

## PARTIES

4. Plaintiff is a resident of Northern District of Illinois.

5. Defendant National Creditors Connection, Inc. ("NCCI") is a corporation with principal offices at 14 Orchard Road, Suite 200, Lake Forest, CA 92630. NCCI does business in Illinois. Its registered agent and office is National Registered Agents, 200 West Adams, Chicago, Illinois 60606.

## DEFENDANT'S BUSINESS

6. NCCI is engaged in the business of assisting creditors and debt collectors with collecting delinquent debts by visiting the homes of delinquent debtors.

7. NCCI uses the mails and interstate telephone system to conduct its business.

8. NCCI describes its standard business practices on its web site.

9. NCCI states on its web site that "As the nation's leader in field contact services since 1992, NCCI provides the face-to-face contact solutions you need to effectively reconnect with customers and gather information vital to your success. These face-to face contacts are made by our nationwide network of background-screened and trained field representatives who treat your customers with dignity, sincerity, and professionalism. Our secure technology systems, insurance protection and unparalleled experience give you the means to efficiently collect what is rightfully yours." (http://www.nationalcreditors.com/default.aspx)

10. NCCI further states on its website "We communicate contact data through our secure technology systems. Knowing that the data we deal with is sensitive, all information we obtain from our clients or as a result of our field contact services will be stored and transferred securely. In fact, our IT programs and hardware are regularly audited by top ranked financial institutions. We have passed each test with high scores and remarkable consistency. [¶] Successful businesses begin with the end in mind. Because we've taken the time and care to focus on outcomes, you can be certain that our service will help you reduce your loan losses - and we will do it right the first time. In short, we connect, we protect and you collect. We have been the leader in the field contact industry since 1992. And, while many have tried to duplicate our processes, there is only one NCCI." (http://www.nationalcreditors.com/our-difference.aspx)

11. NCCI also states on its web site that "NCCI is a privately held corporation. The company administers all client services from our corporate headquarters, a 20,000 square foot office building located in Lake Forest, California. NCCI principals own the building at corporate headquarters. We have a regional office in Omaha, NE. We are a fully licensed, bonded, and

insured California Corporation currently working with over 750 financial institutions throughout the United States.  [¶]  NCCI has successfully conducted more than 3 Million Field Contacts to date. We also conduct physical on-site inspections specifically for credit bureaus and credit bureau resellers, and loss mitigation services for multiple major mortgage companies.  [¶]  Our clients enjoy a seamless management service which utilizes a variety of tools and resources designed to increase customer contact, motivating them toward account resolution.  [¶]  In addition to our national network of qualified field representatives, we provide clients with an unprecedented variety of updates, status reports and secure assigning via a secure web portal." (http://www.nationalcreditors.com/our-company.aspx)

12. NCCI's web site also states "NCCI has an In-House General Counsel which quickly and professionally handles any issues that may arise. NCCI continues to keep 'up-to-date' with changes in laws that govern the assistance in the collection of debts, as well as acquiring all required State Licenses needed by ALL Field Service Firms.  [¶]  NCCI is licensed in all states that require a Collection Agency License. . . ." (http://www.nationalcreditors.com/our-difference/legal-corner.aspx)

13. NCCI's web site also states "NCCI maintains a highly experienced IT and Data Security Team that has over 100 years of collective experience.  [¶]  We have developed extremely sophisticated custom applications that provide secure real time access to information, results and status of work that is being performed. Our custom application allows our development team to provide highly customized reporting and accommodate any special request quickly, efficiently and effectively.  [¶]  Our fault tolerant/ redundant enterprise-level IT infrastructure ensures that you have continuous access to our systems, enabling a smooth and uninterrupted workflow.  [¶]  NCCI's state-of-the-art security programs and technologies reduce your risk of liability by protecting your company's sensitive information against data breaches." (http://www.nationalcreditors.com/our-difference/information-technology.aspx)

14. NCCI's web site states "National Creditors Connection, Inc. (NCCI) was

founded in 1992. The company began performing field contact services for California Credit Unions and quickly grew to over 600 clients such as banks, finance companies, mortgage and auto lenders, to name a few. In 2003, we began conducting onsite physical inspections for the credit bureau industry nationwide. Today, the NCCI staff has more than 300 years of combined experience in the collections arena, and has conducted over three million Field Contacts nationwide for our valued clients."

(http://www.nationalcreditors.com/our-company/ncci-history.aspx)

15. NCCI's web site also states "Since June of 1992, NCCI has strived to be the leading provider of a variety of specialized field services in an effort to allow our valued clients to become the leaders in their respective industries. [¶] Our ability to perform onsite commercial and residential inspections and to make face to face contact with their customers, has allowed us to assist the Financial Institutions, Credit Bureaus, Loan Servicers, and Commercial and Leasing Industries. [¶] We have established a nationwide network of field service professionals, whom must complete FDCPA testing and a seven year background check, thus giving us the finest fleet of representatives in all 50 states and Puerto Rico. [¶] Our staff has over 300 years of combined experience in collections and loss mitigation and over 30 years in the credit bureau industry. At NCCI, we are serious about protecting our clients by providing five million dollar E&O Insurance, national state licensing, data and IT security and to the process in which we engage our field representatives. Please read more about the exceptional (behind the scenes) services we offer. We are very proud of them and are unsurpassed in client protection."

(http://www.nationalcreditors.com/our-company/president's-message.aspx)

16. NCCI describes the types of clients it serves as follows:

Field Contact/Loss Mitigation Clients

Credit Unions
Community Banks
Major Banks
Auto Lending Companies
Mortgage Lending Companies
Finance Companies

>           Equipment/Capital Leasing Companies
>           Commercial Loan Services
>           Commercial Collection Agencies
>           Collection Agencies
>           All Credit Card Companies
>
>           On-Site Inspections
>
>           Credit Reporting Bureaus
>           Pre-Funding SBA Inspections
>           SBA Certifications/Verifications

(http://www.nationalcreditors.com/our-company/types-of-clients.aspx)

17. NCCI describes its field contact services as follows: "Field Contact [¶] Field Contact History [¶] Field calls have been an effective loss mitigation tool for many years for a variety of different creditors. 'Hard money' unsecured lenders began field collection efforts in the late 1940s and auto finance entities have done so since the 1950s. Even today, local governmental municipalities utilize their own field investigators to recover millions of lost tax and fine revenues. [¶] A trend towards outsourcing field collections and investigations has been seen in the last 20 years due to the liability issues of large corporations having employees in the field. Even with all of the technological advances in today's professional debt collection practices, a 'personal field visitation' continues to be a highly effective tool in motivating the customer to resolve their delinquent account. [¶] A 'Field Contact' is a specific service request where a personal visit is made to a borrower's residence or place of employment to assist with re-establishing contact between the creditor and borrower. The role of this service is to act as the 'eyes and ears' of the creditor and gathering data important to reducing loan losses." (http://www.nationalcreditors.com/our-services/field-contact/field-contact-history.aspx)

18. NCCI describes the goals of a "field contact" as follows: "NCCI's field call specialists will follow your specific instructions and requests so that we can interact with your clients the way you would. These valuable services include: Speaking directly with your customers, face to face, whenever possible. Facilitating a phone conversation between you and your customers[.] Motivating your customers to reestablish and continue an open line of

communication with your institution. Interviewing with family, friends and neighbors if a customer is not available. Educating your customers on the importance of communicating with you[.] Delivering confidential correspondence[.] Updating demographic and contact information such as place of employment, current telephone numbers and reason for delinquency. Verifying location and/or condition of your collateral, noting any assets, via digital photos and property condition. [¶] Our field contact services will dramatically increase your staff's ability to communicate with your customers. With increased contact, you will reduce your need for more costly actions such as repossession and foreclosure. [¶] Additionally, NCCI's professionals recognize that most financial institutions value a 'saved loan' as 'money in the bank' and will work diligently to achieve that result. As a lending institution, you need someone that will truly be 'your eyes and ears in the field.'"

(http://www.nationalcreditors.com/our-services/field-contact/field-contact-goals.aspx)

   19. Under "field contact strategy," NCCI states:

    Early Stage Collection Period:

    High Balances
    High Risk Type Accounts
    First Payment Default
    Repeat Offenders

    Late Stage Collection Period:

    Pre-Foreclosure
    Pre-Legal
    Pre-Charge Off
    Pre-Repossession

    Other Stages of Collections:

    Skip Accounts
    Broken Payment Arrangements
    Location of Collateral
    Charge Off Accounts
    Recovery Efforts Condition Reports

(http://www.nationalcreditors.com/our-services/field-contact/field-contact-strategy.aspx)

   20. Under "frequently asked questions," NCCI states:

Q: What do you say to our borrowers when you contact them?

A: NCCI trained Loss Mitigation staff advises your borrower that we are working, on your behalf, to update their contact information, find out reason for delinquency and obtain a financial snapshot of their current position; we explain in general loss mitigation alternatives. We do not advise that we guarantee any particular remedy, just that we provide the information to their lender, so they can hopefully reach a mutually beneficial resolution.

Q: Will you update us directly on any Loss Mit Work Orders that appear as though we can complete a workout agreement?

A: Yes. We will call you directly to discuss or leave a message for you in such cases. For non-urgent files, we will be concluding and you will receive our email completion notices. In some instances, we may feel that the borrower qualifies based on information you may not have and we will contact you directly.

Q: What if the borrower tells you that they have already spoken to our office recently?

A: In such cases, we will still conduct our educational and information gathering procedures. We will advise you via email or message board of the borrowers contentions so you can review directly.

Q: Which part of the final report is most important?

A: The final report that can be accessed off the web contains all of the information obtained when working the file. It is separated out by internal processes such as field interview, internal interview, skip tracing and recommendations. Although all is important, the second page Summary and Overview will relate our efforts in a checklist format as well as crucial recommendations from our loss mitigation staff.

Q: What is the role of your field rep in your Loss Mitigation services?

A: As is with our field call program, our professionally trained field contact reps are focusing on locating and contacting your borrower. They will run the property addresses and other addresses we may have off of our skip tracing module. They will also take three digital pictures of the property.

(http://www.nationalcreditors.com/faqs/loss-mitigation.aspx)

## FACTS RELATING TO PLAINTIFF

21. Defendant has been involved in attempting to collect a residential mortgage loan from plaintiff.

22. In October 2012, plaintiff received the document in Appendix A.

23. Thereafter, on two occasions, representatives of NCCI visited plaintiff's home to

collect information from plaintiff and perform the field call services described above.

24. NCCI did not comply with 15 U.S.C. 1692g, before or within 5 days after such contacts.

25. It is the policy and practice of defendant to not comply with 15 U.S.C. 1692g.

## COUNT I – FDCPA

26. Plaintiff incorporates paragraphs 1-25.

27. Defendant violated 15 U.S.C. §1692g, by failing to provide the required notices within five days of the initial communication with plaintiff.

28. Section 1692g provides:

**§ 1692g. Validation of debts**

**(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in**

subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**(c) Admission of liability.** The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings.** A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions.** The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

## CLASS ALLEGATIONS

29. Plaintiff brings this action on behalf of a class.

30. The class consists of (a) all natural persons with an Illinois address (b) that defendant contacted to obtain information or induce communications (c) on or after a date one year prior to the filing of this action, and (d) on or before a date 20 days after the filing of this action (e) to whom defendant did not provide the disclosures described in 15 U.S.C. §1692g.

31. The class members are so numerous that joinder is impracticable.

32. On information and belief, there are more than 40 natural persons with an Illinois address that defendant contacted with a request for information or communications on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, to whom defendant did not provide the disclosures described in 15 U.S.C. §1692g.

33. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

    a.    Whether defendant was required to comply with the FDCPA; and

b. Whether defendant's method of doing business violates the FDCPA.

34. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

35. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

36. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Many debtors may not realize that their rights are violated.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendant for:

(1) Statutory damages;

(2) Attorney's fees, litigation expenses and costs of suit; and

(3) Such other or further relief as the Court deems proper.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\28581\Pleading\Complaint_Pleading.WPD

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)