**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOUNLAP MATMANIVONG, individually and on behalf of a class, | : : : | Civil Action No. 1:13-cv-05347 |
| Plaintiff, | : : | Judge Kennelly |
| v. | : : | |
| NATIONAL CREDITORS CONNECTION, INC., | : : : | |
| Defendant. | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant National Creditors Connection, Inc. ("NCCI"), by and through its counsel, Fisher & Phillips LLP, and pursuant to Federal Rule of Civil Procedure 56, hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Congressional mandates of the Emergency Economic Stabilization Act of 2008 (EESA), Troubled Asset Relief Program (TARP), and American Recovery and Reinvestment Act of 2009 (ARAA), codified at 12 U.S.C. § 5219 require that mortgage servicers pursue a loss mitigation process with borrowers in an effort to avoid home foreclosures. Personal contacts and the opportunity to obtain a mortgage modification are among the actions required by the implementing regulations. Loss mitigation activities do not qualify as debt collection and are not subject to the Fair Debt Collection Practices Act (FDCPA).

Nonetheless, in July 2013, Plaintiff filed a putative class action against NCCI alleging that it violated the FDCPA because NCCI is a vendor to Bank of America for loss mitigation

services. Am. Compl. ¶¶ 23 to 24.[1] Plaintiff's Complaint is misguided because it ignores the Congressionally mandated foreclosure avoidance efforts pursuant to 12 U.S.C. § 5219. Home ownership preservation through loss mitigation is the direct opposite of collecting on a mortgage debt. Moreover, the undisputable facts establish that NCCI's loss mitigation activities are not governed by the FDCPA because NCCI was not in a role and did not engage in the activities defined as debt collection. Finally, the undisputable facts establish that Plaintiff lacks constitutional standing requirements to prosecute a claim under the FDCPA. Plaintiff has not suffered an actual injury. Statutory damages are an alternative remedy, not a substitute for the constitutional requisite of an actual injury.

Accordingly, Plaintiff's Complaint should be dismissed in its entirety, and NCCI's Motion for Summary Judgment should be granted in favor of NCCI and against Plaintiff.

## STATEMENT OF FACTS

The facts supporting NCCI's motion for summary judgment are set forth in its Rule 56.1 Statement of Undisputed Material Facts ("Facts"), and expressly incorporated by reference.

## LEGAL ARGUMENT

### I. Standard for Summary Judgment.

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Senne v. Vill. of Palatine*, 2013 U.S. Dist. LEXIS 168677, *7 (N.D. Ill. Nov. 27, 2013) (Kennelly, J.) (quoting Fed.R.Civ. P. 56(a)). "In other words, a court may grant summary judgment '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2013 U.S. Dist. LEXIS 159491, *28 (N.D.

---

[1] Plaintiff alleged that NCCI called his daughter in violation of the FDCPA, but shortly thereafter dismissed those meritless allegations. *See* Docket Entries 43, 44, & 45.

2

Ill. Nov. 7, 2013) (Kennelly, J.) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Senne*, 2013 U.S. Dist. LEXIS 168677, at *7 (quoting *Adeyeye v. Heartland Sweeteners*, 721 F.3d 444, 449 (7th Cir. 2013)).

## II. Loss Mitigation is Regulated by TARP.

Loss mitigation is governed by federal regulations and by definition falls outside of the ambit of the FDCPA. "In response to rapidly deteriorating financial market conditions in the late summer and early fall of 2008, Congress enacted the Emergency Economic Stabilization Act, P.L. 110-343, 122 Stat. 3765." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). The Troubled Asset Relief Program (TARP), which was part of the EESA, required the Secretary of the Treasury to "implement a plan that seeks to maximize assistance for homeowners and... encourage the servicers of the underlying mortgages... to take advantage of... available programs to minimize foreclosures.'" *Id.* (omissions in the original) (citing 12 U.S.C. § 5219(a)). Pursuant to the authority given, "the Secretary created an array of programs designed to identify likely candidates for loan modifications and encourage lenders to renegotiate their mortgages" to minimize debt and promote homeownership. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 228 (1st Cir. 2013). These programs included, the Making Home Affordable Program and other foreclosure avoidance and home preservation programs.

### A. The Plain Language of the Statute Mandating Loss Mitigation Establishes that Loss Mitigation is Not Covered By the FDCPA.

Pursuant to 12 U.S.C. § 5219, the Secretary has the direction and authority to "implement a plan" to meet the overall purpose of avoiding foreclosures and helping homeowners preserve their homes. The statute explicitly contains language such as "maximize assistance for

3

homeowners," "minimize foreclosures," and "prevent avoidable foreclosures" to permit homeowners to maintain ownership of their home through a mortgage modification. *Id.* Indeed, the plain language of 12 U.S.C. § 5219 instructs the Secretary to promulgate and institute programs to prevent the debt collection process, if not, completely avoid it, by shielding against foreclosures and promoting homeownership. Moreover, the statute is strikingly *silent* on the issue of debt collection or the need to comply with the FDCPA.

When interpreting statutes, courts seek to discern Congress's intent and start with the plain language used. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). "When a statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Sebelius v. Cloer*, 133 S.Ct 1886, 1889 (2013) (citation omitted). "First and foremost [courts] give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent." *U.S. v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). Moreover, when interpreting a statute, courts cannot and "will not invent missing language." *In re Globe Building Materials, Inc.*, 463 F.3d 631, 669 (7th Cir. 2006). Section 5219 clearly provides that loss mitigation efforts are not covered by the FDCPA.

Hence, based on the plain language of the statute, loss mitigation efforts in accordance with 12 U.S.C. § 5219 are not and cannot be covered by the FDCPA.

**B.    The Intent, Purpose, and Public Policy of the Statute Mandating Loss Mitigation Establishes that Loss Mitigation is Not Covered By the FDCPA.**

Courts must "construe statutes in the context of the entire statutory scheme...; favor the more reasonable result; and avoid construing statutes contrary to the clear *intent* of the statutory scheme." *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir. 2004) (quotes omitted) (emphasis added). The intent and purpose of the EESA and TARP is to avoid foreclosures and promote

4

homeownership during a time period of financial degeneration. 12 U.S.C. § 5201. Congress expressly delegated the authority to implement necessary procedures governing loss mitigation efforts to the Secretary of the Treasury. 12 U.S.C. § 5219 ("the Secretary shall implement a plan that seeks to maximize assistance for homeowners.."); *Wigod*, 673 F.3d at 556. In exercising the powers granted, the Secretary was specifically instructed to consider, among other things, "the need to help families keep their homes and to stabilize communities." 12 U.S.C. § 5213. Indeed, the Seventh Circuit recognizes that the EESA, TARP and the implementing regulations explicitly requires the Secretary to take action to accomplish the very purpose of preventing and avoiding foreclosures. *Wigod*, 673 F.3d at 556.

The regulations enacted for loss mitigation in accordance with 12 U.S.C. § 5219 to implement foreclosure avoidance and promote home preservation establish that actions taken pursuant to the statute are not and cannot be considered debt collection. 12 C.F.R. §1024.39 *et seq*. In the regulations, loss mitigation is specifically defined as "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. §1024.39. If loss mitigation is governed by the FDCPA, the overall and *explicitly stated* purpose and intent of the law would be entirely frustrated because it will put servicers engaging in loss mitigation communication in the unwinnable situation of trying to comply with two statutes and ensure that language from two laws with contradicting purposes will not confuse the least sophisticated consumer. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (allowing use of extrinsic evidence to demonstrate the letter would be confusing). Therefore, as intended, the purpose of loss mitigation is antithetical to debt collection because 12 U.S.C. §5219 and the FDCPA serve separate, opposite and competing goals – maintaining homeownership (12 U.S.C. §5219) versus debt collection (the FDCPA).

5

Moreover, subjecting loss mitigation efforts to the requirements of the FDCPA would only contravene and contradict the explicit purpose and intent of 12 U.S.C. § 5219, and feed the "cottage industry" of litigation based on "technical violations of federal law" driven solely by the pursuit of attorneys' fees. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 616-17 (2010) (Kennedy, J., dissenting).

Accordingly, the purpose, intent and public policy of 12 U.S.C. § 5219 demonstrates that loss mitigation efforts are not and cannot be covered by the FDCPA.

### C. The Regulations Enacted to Implement Loss Mitigation Pursuant to the Statute Mandating Loss Mitigation Establish that Loss Mitigation is Not Covered By the FDCPA

The regulations enacted for loss mitigation in accordance with 12 U.S.C. § 5219 outline specific compliance requirements for loss mitigation efforts by servicers. *See e.g.* 12 C.F.R. §§1024.39 (Early Intervention requirements) and 1024.40 (Continuity of Contact requirements). Notably, these requirements under 12 C.F.R. §1024.39 *et seq.*, including all communications related to them, are required to occur, or continue occurring, even ***after*** the borrower sends a notification pursuant to 15 U.S.C. 1692(c) of the FDCPA. Hence, loss mitigation communications to avoid foreclosure and promote homeownership pursuant to 12 U.S.C. § 5219 trump a borrower's demand that debt collection communications cease under the FDCPA. Accordingly, the fact that loss mitigation efforts may occur, and ***must*** continue to occur, even after a demand for debt collection efforts cease, establishes that loss mitigation efforts are outside of the purview of the FDCPA.

If a statute is ambiguous or silent, a court will defer to an agency's reasonable interpretation of the statute. *Chevron U.S.A. Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 843 (1984). This deference is mandatory when "Congress has expressly or implicitly

indicated that it intended an agency to speak with the force of law on a matter, and the agency's position on that matter is reasonable." *Matz v. Household Int'l Tax Reduction Inv. Plan*, 265 F.3d 572, 574 (7th Cir. 2001). Accordingly, pursuant to Congressional mandates for loss mitigation, courts should defer to the implementing regulations enacted by the Secretary.

Simply put, the Congressional mandates under 12 U.S.C. § 5219 and its implementing regulations for home preservation programs cannot be reconciled with, and in fact, directly contradict, the FDCPA. As a result, Plaintiff's Complaint in its entirety must be dismissed as a matter of law because loss mitigation is not covered by the FDCPA.

### D. The Exclusion of NCCI's Loss Mitigation Service From Coverage By the FDCPA Is Consistent with the Definition of Debt Collection.

NCCI's Loss Mitigation Service is not within the scope of the FDCPA. "For the FDCPA to apply,…, two threshold criteria must be met." *Gburek v. Litton Loan Servs. LP*, 614 F.3d 380, 384 (7th Cir. 2010); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The defendant must meet the definition of a debt collector and must make a communication "'in connection with the collection of any debt.'" *Gburek*, 614 F.3d at 384. Indeed, the FDCPA does **not** apply to every communication between debtors and debt collectors. *Bailey v. Security Nat'l Servs. Corp.*, 154 F.3d 384, 389-90 (7th Cir. 1998); *Grden*, 643 F.3d at 173. Accordingly, the FDCPA's disclosure requirements only apply to a communication if, and **only** if, a communication was made in connection with the actual collection of a debt. 15 U.S.C. §§1692c, 1692e; *Gburek*, 614 F.3d at 382. The Seventh Circuit identifies three factors for determining if a communication is covered by the FDCPA: (1) the absence of a demand for payment in the communication, (2) the nature of the parties' relationship, and (3) the reason and context of the communication. Notably, the reason and context for the communication are to be viewed objectively. *Gburek*, 614 F.3d at 385.

7

## 1.    NCCI Made No Demand for Payment.

The Seventh Circuit has held that for the FDCPA to apply, there must be a communication and that communication *must* make a demand for payment or be "made specifically to induce the debtor to settle" a debt. *Gburek*, 614 F.3d at 385 (emphasis added). Here, the facts establish that NCCI did not and could not demand payment for a debt or induce Plaintiff to settle a debt. Facts ¶¶ 32-35. NCCI did not collect any debt, did not seek payment on any debt, and did not discuss payment, payment options, or payment plans with the Plaintiff. Facts ¶¶ 32-36. To the contrary, the facts establish that NCCI merely contacted Plaintiff to collect, pick up and deliver mortgage modification documents between Plaintiff and BOA for the purpose of avoiding foreclosure and preserving his home. Facts ¶¶ 49-50, 53-54.

## 2.    The Relationship of Plaintiff and NCCI Was Not One of Debtor and Debt Collector.

Relationships that arise as a result of the defendant's ownership of the debtor's defaulted debt, generally demonstrate that the communications were made in connection with debt collection activities. *Ruth v. Triumph P'Ships*, 577 F.3d 790, 798-99 (7th Cir. 2009). Here, the undisputed facts establish that NCCI did not own, purchase, assume or take assignment of Plaintiff's debt with BOA. Facts ¶¶ 43-46. The facts further establish that NCCI merely acted as a courier or messenger service because it simply collected, picked up, packaged, and delivered documents to BOA. Facts ¶¶ 7, 10, 11; *Aquino v. Credit Control Servs.*, 4 F. Supp. 2d 927, 930 (N.D. Cal. 1998) (holding that messengers are not debt collectors as "the FDCPA's definition of debt collection [does] not encompass the mere packaging and delivery of another's collection notices"); *Trull v. Lason Systems, Inc.*, 982 F. Supp. 600, 607 (N.D. Ill. 1997) (holding that a "printing and mailing service" is not a debt collector under the FDCPA); *Laubach v. Arrow*

*Service Bureau, Inc.*, 987 F. Supp. 625, 629-30 (N.D. Ill. 1997) (holding that "label merging, letter printing, and mass mailing activities are not violations" of the FDCPA).

**3.     The Context and Reason of the Communication Show That the Communication Was Not in Connection with Collection of a Debt.**

Courts evaluate the nature of any communication using an objective standard. *Gould v. Claimassist*, 876 F. Supp. 2d 1018, 1024 (S.D. Ill. 2012) (citing *Ruth*, 577 F.3d at 797-98). Any interpretation of the context and reason of a communication must be reasonable. *Id.* Here, the context and reason for NCCI's communication with Plaintiff was based solely on regulations mandating loss mitigation to promote homeownership. Facts ¶ 8. Moreover, NCCI did not collect, induce or direct payment of any debt, nor did NCCI attempt to collect, attempt to induce or attempt to direct payment of any debt. Facts ¶¶ 32-35. NCCI did not and could not discuss or offer to discuss payment, payment options, payment plans, repayment options, or foreclosure options with Plaintiff. Facts ¶ 36. To the contrary, the context and reason for NCCI's communication with Plaintiff was to avoid foreclosure and promote homeownership by simply picking up and delivering documentation between Plaintiff and BOA. Facts ¶¶ 7, 10, 11.

Accordingly, NCCI's loss mitigation efforts with Plaintiff are not and cannot be covered by the FDCPA, and NCCI is entitled to summary judgment as a matter of law.

**III.     Plaintiff's Complaint Should Be Dismissed Because Plaintiff Does Not Have Standing to Seek Relief.**

Assuming *arguendo* that loss mitigation is subject to the FDCPA, a plaintiff must suffer an actual injury. Article III of the United States Constitution limits the jurisdiction of federal courts to **actual cases and controversies**. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-60 (1992); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("No principle is more fundamental to the judiciary's proper role in our system of government then the constitutional

limitation of federal-court jurisdiction to actual cases or controversies"). The threshold issue of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," and it requires that "a plaintiff must present an injury that is concrete, particularized, and actual or imminent…[and] fairly tracable. *Lujan,* 504 U.S. at 560; *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Horne v. Flores,* 557 U.S. 433, 560-61 (2009).

While Congress may be able to create new causes of action, it cannot abrogate Article III's minimum standing requirements. *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself... that is likely to be redressed if the requested relief is granted") (quotes and citations omitted); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 487 n. 24 (1982) ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III"); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976) ("broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury") (citation omitted). Indeed, this "outer limit to the power of Congress to confer rights of action is a direct and necessary consequence of the case and controversy limitations found in Article III." *Lujan*, 504 U.S. at 580 (Kennedy, J. concurring in part and concurring in the judgment). Thus, despite the significance of an issue, federal courts do not have jurisdiction and cannot proceed unless the plaintiff establishes standing. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257-58 (3d Cir. 2009).

A. **Plaintiff Does Not Have Standing Because He Cannot Establish Any Injury in Fact.**

As the party invoking federal jurisdiction, Plaintiff has the burden to establish standing. *Lujan*, 504 U.S. at 560. Standing is a requirement in any lawsuit, including those alleging causes of action that may provide for an individual's monetary losses. *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 273-74 (2008) (requiring standing for lawsuits under the Communications Act of 1934); *Gollust v. Mendell*, 501 U.S. 115, 125 (1991) (requiring standing in a lawsuit under §16(b) of the of the Securities Exchange Act of 1934). "[T]he requirements of Article III case-or-controversy standing are threefold: (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court." *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *DaimlerChrysler Corp.*, 547 U.S. at 342; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

Although all three elements are "constitutionally mandated, the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). A plaintiff must demonstrate an "'injury in fact' — a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Also, injury in fact "'requires that the party seeking review be himself among the injured.'" *Lujan*, 504 U.S. at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). The requirement of an injury in fact "is a hard floor of Article III jurisdiction that ***cannot*** be removed by statute." *Summers*, 555 U.S. at 497; *Raines v. Byrd*, 521 U.S. 811, 819 n. 3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing"). In other words, a suit that permits the

11

recovery of damages without any actual injury can only serve "the interest of seeing that the law is obeyed," which is categorically insufficient to support Article III standing requirements. *Valley Forge Christian Coll.*, 454 U.S. at 483; *FEC v. Akins*, 524 U.S. 11, 24 (1998). Indeed, an interest "that is merely a byproduct of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes." *Vt. Agency of Natural Res.*, 529 U.S. at 773 [a plaintiff only has standing to sue for statutory damages when he has suffered the necessary injury in fact]. Accordingly, equating such an interest with cognizable injuries would effectively allow "citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws," which is overtly rejected by our Supreme Court. *Massachusetts v. EPA*, 549 U.S. 497, 516-17 (2007) (internal quotes and citation omitted).

In the case at bar, Plaintiff's Complaint alleges that the FDCPA was violated by the omission of information in a letter that Plaintiff never read. *See* Am. Compl. To support the Complaint, Plaintiff specifically contends that NCCI's letter in October 2012 containing the 15 U.S.C. § 1692g disclosures violates the FDCPA because the omission of the amount of the debt makes the letter "misleading." Am. Compl. ¶ 27. Yet, Plaintiff unequivocally concedes at deposition that he never opened, let alone read, any letter from NCCI. Facts ¶¶ 51-52, 56-57. Thus, Plaintiff does not and cannot have any standing to bring this Complaint, on behalf of himself or a putative class, because he admittedly was not mislead by or exposed to the allegedly defective letter from NCCI.

### B. The FDCPA's Statutory Damages Provision in Not a Substitute for An Actual Injury

Notably, the Seventh Circuit decision in *Crabill*, a Fair Credit Reporting Act (FCRA) case, echoes Article III and reasons that "[w]ithout a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual

12

damages.'" *Crabill v. Trans Union* 259 F.3d 662, 664 (7th Cir. 2001) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996); *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 473 (2d Cir. 1995); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991)). The reasoning in *Crabill* is on point and mirrors the constitutionally required injury in fact necessary prerequisite. *Crabill*, 259 F.3d at 664 (if no injury is alleged, then as a result there is no case or controversy between the parties); *Martin v. Leading Edge Recovery Solutions* 2012 U.S. Dist. LEXIS 112795 (N.D. Ill. Aug. 10, 2012) (an injury of some sort is required to establish standing).

Importantly, the rational in *Crabill* should be applied in the case at bar. Specifically, on the issue of statutory damages, the *Crabill* court accurately reasoned that although FCRA and similar consumer protection statutes (e.g. FDCPA) create a bounty system, these statutes still require an actual injury for a plaintiff to recover any damages. *Crabill,* 259 F.3d at 665-66 ("a plaintiff has standing to bring suit for a violation of a consumer protection statute that caused 'little measurable injury' so long as the suit would clearly redress 'an injury of some sort.'"). Indeed, the *Crabill* decision properly recognizes that statutory damages (alone) without any actual injury does not and cannot satisfy Article III's standing requirement of an injury in fact. Cases that have allowed statutory damages without any injury are incorrect and should be disregarded because they permit the recovery of an injury in law, not an injury in fact. [2] The results of these cases violate Article III because they ignore the standing requirement's

---

[2]  *See e.g. Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006); *Keele v. Wexler* 149 F.3d 589 (7th Cir. 1998). The *Bartlett*, *Murray*, and *Keele* courts all failed to recognize that Congress cannot remove the constitutional requirement that a plaintiff suffer an actual injury by statute. *See Summers*, 555 U.S. at 497; *Raines*, 521 U.S. at 819; *Gladstone, Realtors*, 441 U.S. at 100; *Valley Forge Christian Coll.*, 454 U.S. at 487 n. 24; *Simon*, 426 U.S. at 39. Accordingly, these cases should be disregarded as a matter of constitutional law.

constitutional dimensions. The reasoning in *Crabill* provides the correct analysis courts should use to determine if a plaintiff has standing in a suit when only seeking statutory damages.

Here, Plaintiff's Complaint fails under the *Crabill* analysis because he suffered no injury. Statutory damages are not a constitutionally acceptable substitute for actual damages. Hence, Plaintiff's election of statutory damages cannot be used to erase the injury-in-fact prerequisite because absolute liability is unconstitutional.

## CONCLUSION

For all of the foregoing reasons, NCCI respectfully requests that the court grant its motion for summary judgment, and dismiss Plaintiff's Complaint with prejudice in its entirely.

DATED: July 9, 2014          Respectfully Submitted,

By: /s/ Jason A. Storipan
      JASON A. STORIPAN
      For FISHER & PHILLIPS LLP
      430 Mountain Avenue, Suite 303
      Murray Hill, New Jersey 07974
      Telephone: (908) 516-1050
      Fax: (908) 516-1051
      jstoripan@laborlawyers.com

      Attorneys for Defendant
      National Creditors Connection, Inc.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

LEGAL ARGUMENT ............................................................................................................. 2

   I.   Standard for Summary Judgment. .................................................................................... 2

   II.   Loss Mitigation is Regulated by TARP. ......................................................................... 3

      A.   The Plain Language of the Statute Mandating Loss Mitigation Establishes
          that Loss Mitigation is Not Covered By the FDCPA ......................................... 3

      B.   The Intent, Purpose, and Public Policy of the Statute Mandating Loss
          Mitigation Establishes that Loss Mitigation is Not Covered By the FDCPA. ... 4

      C.   The Regulations Enacted to Implement Loss Mitigation Pursuant to
          the Statute Mandating Loss Mitigation Establish that Loss Mitigation
          is Not Covered By the FDCPA. ......................................................................... 6

      D.   The Exclusion of NCCI's Loss Mitigation Service From Coverage By the
          FDCPA Is Consistent with the Definition of Debt Collection. .......................... 7

         1.   NCCI Made No Demand for Payment. ....................................................... 8

         2.   The Relationship of Plaintiff and NCCI Was Not One of Debtor and Debt
             Collector. .................................................................................................... 8

         3.   The Context and Reason of the Communication Show That the
             Communication Was Not in Connection with Collection of a Debt. ........... 9

   III.   Plaintiff's Complaint Should Be Dismissed Because Plaintiff Does Not Have
       Standing to Seek Relief. ............................................................................................ 9

      A.   Plaintiff Does Not Have Standing Because He Cannot Establish Any Injury in
          Fact. ................................................................................................................. 11

      B.   The FDCPA's Statutory Damages Provision is Not a Substitute for
          An Actual Injury. ........................................................................................... 12

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adeyeye v. Heartland Sweeteners*, 721 F.3d 444, 449 (7th Cir. 2013)).........................................3

*Aquino v. Credit Control Servs.*,
    4 F. Supp. 2d 927 (N.D. Cal. 1998)................................................................8

*Bailey v. Security Nat'l Servs. Corp.*,
    154 F.3d 384 (7th Cir. 1998) .........................................................................7

*Bartlett v. Heibl*,
    128 F.3d 497 (7th Cir. 1997) .......................................................................13

*Booker-El v. Superintendent, Indiana State Prison*,
    668 F.3d 896 (7th Cir. 2012) .......................................................................11

*Chevron U.S.A. Inc. v. Natural Res. Def. Counsel, Inc.*,
    467 U.S. 837 (1984) .......................................................................................6

*Cole v. U.S. Capital*,
    389 F.3d 719 (7th Cir. 2004) .........................................................................4

*Common Cause of Pa. v. Pennsylvania*,
    558 F.3d 249 (3d Cir. 2009) ........................................................................10

*Crabill v. Trans Union*,
    259 F.3d 662 (7th Cir. 2001) ...........................................................12, 13, 14

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................9, 11

*FEC v. Akins*,
    524 U.S. 11 (1998) .......................................................................................12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) .....................................................................................11

*Gburek v. Litton Loan Servs. LP*,
    614 F.3d 380 (7th Cir. 2010) ......................................................................7, 8

*Gladstone, Realtors v. Bellwood,*
    441 U.S. 91 (1979) ............................................................................10, 13

*In re Globe Building Materials, Inc.,*
    463 F.3d 631 (7th Cir. 2006) ....................................................................4

*Gollust v. Mendell,*
    501 U.S. 115 (1991) (of 1934) ...............................................................11

*Gould v. Claimassist,*
    876 F. Supp. 2d 1018 (S.D. Ill. 2012) .....................................................9

*Grden v. Leikin Ingber & Winters PC,*
    643 F.3d 169 (6th Cir. 2011) ....................................................................7

*Horne v. Flores,* 557 U.S. 433, 560-61 (2009) ...........................................10

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.,*
    559 U.S. 573 (2010) .................................................................................6

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ..................................................................13

*Lamie v. U.S. Tr.,*
    540 U.S. 526 (2004) .................................................................................4

*Laubach v. Arrow Service Bureau, Inc.,*
    987 F. Supp. 625 (N.D. Ill. 1997) ...........................................................8

*Lox v. CDA, Ltd.,*
    689 F.3d 818 (7th Cir. 2012) ....................................................................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .......................................................................9, 10, 11

*Martin v. Leading Edge Recovery Solutions,*
    2012 U.S. Dist. LEXIS 112795 (N.D. Ill. Aug. 10, 2012) ...........................13

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ...............................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)) ............................3

*Matz v. Household Int'l Tax Reduction Inv. Plan,*
    265 F.3d 572 (7th Cir. 2001) ....................................................................7

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006) ...................................................................13

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
  2013 U.S. Dist. LEXIS 159491 (N.D. Ill. Nov. 7, 2013) ..............................2

*Raines v. Byrd*,
  521 U.S. 811 (1997) ..............................................................................11, 13

*Ruth v. Triumph P'Ships*,
  577 F.3d 790 (7th Cir. 2009) .....................................................................8

*Sebelius v. Cloer*,
  133 S.Ct 1886 (2013)..................................................................................4

*Senne v. Vill. of Palatine*,
  2013 U.S. Dist. LEXIS 168677 (N.D. Ill. Nov. 27, 2013) (Kennelly, J.) .................2, 3

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ...............................................................................10, 13

*Sprint Communs. Co., L.P. v. APCC Servs.*,
  554 U.S. 269 (2008) ..................................................................................11

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .............................................................................11, 13

*Toll Bros., Inc. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009) .....................................................................11

*Trull v. Lason Systems, Inc.*,
  982 F. Supp. 600 (N.D. Ill. 1997)...............................................................8

*U.S. v. Vallery*,
  437 F.3d 626 (7th Cir. 2006) .....................................................................4

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
  454 U.S. 464 (1982) .........................................................................10, 12, 13

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000) .............................................................................11, 12

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................................10

*Wigod v. Wells Fargo Bank, N.A.,*
    673 F.3d 547 (7th Cir. 2012) ...................................................................3, 5

*Young v. Wells Fargo Bank, N.A.,*
    717 F.3d 224 (1st Cir. 2013) ...................................................................3

**Federal Statutes**

12 U.S.C. § 5201 ...................................................................5

12 U.S.C. § 5213 ...................................................................5

12 U.S.C. § 5219 ...................................................................1, 2, 3, 4, 5, 6, 7

15 U.S.C. §1692(c) ...................................................................6, 7

15 U.S.C. §1692e ...................................................................7

15 U.S.C. § 1692g ...................................................................12

American Recovery and Reinvestment Act of 2009 ...................................................................1

Emergency Economic Stabilization Act 2008 (EESA) ...................................................................1, 3, 4, 5

Fair Credit Reporting Act (FCRA) ...................................................................12, 13

Fair Debt Collection Practices Act (FDCPA) ...................................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13

**Rules**

Federal Rule of Civil Procedure 56 ...................................................................1, 2

**Regulations**

12 C.F.R. § 1024.39 ...................................................................5, 6

12 C.F.R. §1024.40 ...................................................................6

**Constitutional Provisions**

Article III of the United States Constitution ...................................................................9, 10, 11, 12, 13