**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOUNLAP MATMANIVONG, individually and on behalf of a class, | ) ) ) | |
| | ) | 13-cv-5347 |
| Plaintiff, | ) ) | Judge Matthew F. Kennelly |
| vs. | ) ) | |
| NATIONAL CREDITORS CONNECTION, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

Defendant National Creditors Connection, Inc. ("NCCI") has moved for summary judgment on plaintiff Bounlap Matmanivong's claims under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff has filed a cross-motion for summary judgment and files this memorandum in support of his cross motion for summary judgment and in opposition to NCCI's motion for summary judgment. As discussed below, NCCI's activities are debt collection activities, its communications were in connection with the collection of a debt, and plaintiff has standing to pursue the FDCPA claims whether or not he personally read correspondence from NCCI. Further, NCCI 's purported 1692(g) notice fails to comply with the FDCPA and NCCI provided no other notices that comply with 15 U.S.C. §1692(g). Thus, this Court should deny NCCI's motion for summary judgment and grant plaintiff's cross motion for summary judgment.

**FACTS**

Defendant NCCI is engaged by mortgage companies to perform loss-mitigation contacts on their behalf. Statement of Additional Material Facts ("Add'l SMF") ¶1. A loss-mitigation contact is an attempt to help a debtor avoid a foreclosure. Add'l SMF ¶1.

NCCI's Field Representatives conduct face-to-face interviews with borrowers in default where they advise the debtors that NCCI is working on behalf of Bank of America to update contact information, find out reasons for delinquency, obtain information about the debtor's current financial position, and explain loss mitigation alternatives. Add'l SMF ¶2.

According to NCCI's website, field calls have been an effective loss mitigation tool for many years. Add'l SMF ¶3. NCCI provides a specific service where a personal visit is made to a borrower's residence or place of employment to assist with re-establishing contact between the

1

creditor and borrower.  The role of this service is to act as the "eye and ears " of the creditor and

gather data important to reducing loan losses.  Add'l SMF ¶3.

Specifically, on behalf of Bank of America, NCCI's Field Representatives take pictures

of the debtor's residence and neighborhood. NCCI's representatives also complete a Field

Interview and an Inspection Worksheet, reporting such information as whether the property is

occupied by the debtor or a third party or whether it is vacant; get updated telephone numbers

(home, work, or cell), including from third parties; demand and check the debtor's identification;

inquire whether the debtor is in the armed services; inquire whether the debtor wants to save his

home, and why or why not; inquire whether the debtor has documents necessary for a loan

modification; inquire whether the debtor made recent payments, and if so, in what amount and

by what method; inquire whether the debtor is in bankruptcy; and observe and record the

property's condition, whether utilities are on, and whether the property is listed for sale.[1] Add'l

---

[1] In its "frequently asked questions," NCCI on its Website states:

Q: What do you say to our borrowers when you contact them?

A: NCCI trained Loss Mitigation staff advises your borrower that we are
working, on your behalf, to update their contact information, find out reason for
delinquency and obtain a financial snapshot of their current position; we explain
in general loss mitigation alternatives. We do not advise that we guarantee any
particular remedy, just that we provide the information to their lender, so they can
hopefully reach a mutually beneficial resolution.

Q: Will you update us directly on any Loss Mit Work Orders that appear as
though we can complete a workout agreement?

A: Yes. We will call you directly to discuss or leave a message for you in such
cases. For non-urgent files, we will be concluding and you will receive our email
completion notices. In some instances, we may feel that the borrower qualifies
based on information you may not have and we will contact you directly.

SMF ¶5.

On October 4, 2012, defendant sent plaintiff a letter, which is Appendix A to the First

Amended Complaint ("Am. Cmplt.").  The letter states that it is from Bank of America, but it is

sent by NCCI. Add'l SMF ¶7.  In response, on October 9, 2012, Mr. Matmanivong phoned

NCCI. Add'l SMF ¶8.  NCCI captured Mr. Matmanivong's telephone number and updated his

records. Add'l SMF ¶8. On October 11, 2012, an NCCI field representative left  documents with

Mr. Matmanivong.  Add'l SMF ¶9.

On October 12, 2012, NCCI sent Mr. Matmanivong an FDCPA letter, either (1)

Appendix B to the Amended Complaint or (2) pages NCCI/668 (front) NCCI/667 (back)

---

Q: What if the borrower tells you that they have already spoken to our office
recently?

A: In such cases, we will still conduct our educational and information gathering
procedures. We will advise you via email or message board of the borrowers
contentions so you can review directly.

Q: Which part of the final report is most important?

A: The final report that can be accessed off the web contains all of the
information obtained when working the file. It is separated out by internal
processes such as field interview, internal interview, skip tracing and
recommendations. Although all is important, the second page Summary and
Overview will relate our efforts in a checklist format as well as crucial
recommendations from our loss mitigation staff.

Q: What is the role of your field rep in your Loss Mitigation services?

A: As is with our field call program, our professionally trained field contact reps
are focusing on locating and contacting your borrower. They will run the property
addresses and other addresses we may have off of our skip tracing module. They
will also take three digital pictures of the property.

(http://www.nationalcreditors.com/faqs/loss-mitigation.aspx) Add'l SMF¶5.

(Appendix 3). Add'l SMF ¶10. On October 16, 2012, NCCI Field Representatives picked up documents from Mr. Matmanivong. Add'l SMF ¶10.

[redacted]

[redacted]

[redacted]

Redacted



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Mr. Matmanivong is not fluent in English. A Laotian interpreter was used at the deposition. Matmanivong dep (Appendix 5) at 2. Mr. Matmanivong stated that his children often opened mail for him. Matmanivong dep (Appendix 5) at 58:20-21. Joy Matmanivong, Mr. Matmanivong's daughter, testified that she often reads Mr. Matmanivong's mail to help him understand it. April 4, 2014 Joy Matmanivong deposition (Appendix 6). Add'l SMF ¶16.

## I.     NCCI'S LOSS MITIGATION ACTIVITIES ARE SUBJECT TO THE FDCPA

Three courts, including the Seventh Circuit, have determined that persons who perform loss mitigation activities and field services on behalf of mortgage companies are subject to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"). *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010)(Court applied FDCPA to three letters. One apprised a delinquent mortgagor of "foreclosure alternatives" and asked for financial information for the purpose of evaluating those alternatives; the other two asked the mortgagor to provide financial information to the mortgage company); *Siwulec v. J.M. Adjustment Services, LLC*, 465 Fed. Appx. 200 (3d Cir. March 1, 2012) (not published)(FDCPA applied to service which, on behalf of mortgage companies, personally delivered letters and "urge(d) alleged debtors in person to call the creditor while they watched; . . .gather(ed) contact information from the debtors directly, . . . sp(oke) with neighbors and . . .conduct(ed) a visual assessment of their properties"); *Simpson v. Safeguard Properties, LLC*, (No. 13 C 2453), 2013 WL 2642143, *2,

(N.D. Ill. June 12, 2013)(Applied the FDCPA to activities of a company that marketed "its services to mortgage companies with delinquent or defaulted debtors" . . . "including communicating with delinquent borrowers on behalf of the mortgage companies, contacting mortgagors to request that they call mortgage companies and reporting back whether it has made contact with mortgagors and regarding the condition of the mortgage properties.")  Despite these opinions, NCCI argues that "Loss mitigation activities do not qualify as debt collection and are not subject to the [FDCPA]," NCCI Mem at 1.  NCCI is wrong.

## A. THE FDCPA DOES NOT CONFLICT WITH TARP AND NCCI IS SUBJECT TO BOTH STATUTES

NCCI argues that Loss Mitigation is governed by the Troubled Asset Relief Program ("TARP") and "by definition falls outside of the FDCPA."  This is incorrect.  TARP and the FDCPA do not conflict, and NCCI must comply with all federal statutes that govern the defendant's activity.  *Randolph v. IMBS*, 368 F.3d 726, 730 (7th Cir. 2004). TARP does not trump the FDCPA.

NCCI argues that Loss Mitigation is intended to "'maximize assistance for homeowners,' 'minimize foreclosures' and 'prevent avoidable foreclosures.'" NCCI Mem at 4.  However, TARP recognizes that the program is necessary because borrowers are in default, need assistance to avoid foreclosure, and that successful loss mitigation will result in debtors in default paying money to creditors to avoid foreclosure. These are exactly the types of activity, eliciting payment or reinstatement by debtors, that the FDCPA is designed to encompass.

## B. LOSS MITIGATION ACTIVITIES ARE COMMUNICATIONS IN CONNECTION WITH THE COLLECTION OF A DEBT

15 U.S.C. § 1692g provides as follows:

§ 1692g. Validation of debts

(a) Notice of debt; contents. **Within five days after the initial communication with a consumer in connection with the collection of any debt**, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed; . . .
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; . . .

"Communication" is broadly defined in §1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Nothing in §1692a(2) permits a court to consider the "overall tone and content of the notice" or other subjective factors.

NCCI's loss mitigation activities are clearly "in connection with the collection of any debt." "In connection with" is an extremely "broad" and "expansive" phrase. *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996); *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000); *United States v. Thompson*, 32 F.3d 1, 7 (1st Cir.1994).

In the leading decision of *Foti v. NCO Financial Systems*, 424 F. Supp.2d 643, 655 (S.D.N.Y. 2006), the court held that a voicemail message that merely requested a return call to discuss an unspecified "business matter" was subject to the FDCPA. The court held that:

Defendant's voice message, while devoid of any specific information about any particular debt, clearly provided some information, even if indirectly, to the intended

7

>recipient of the message. Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter. Given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call, it is difficult to imagine how the voicemail message is not a communication under the FDCPA. (424 F.Supp.2d at 655-6)

The court held that "consistent with Congress' intent in enacting the FDCPA, the statute [including the meaning of the word "communication"] should be construed broadly." *Foti*, 424 F.Supp.2d at 655 (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989)). As the statute is intended to protect consumers, it must be liberally construed in favor of consumers. *Id.* (citing *Blair v. Sherman Acquisition*, No. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D.Ill. Dec. 13, 2004)). It was enough that the call was "the first step in a process designed to communicate with plaintiff about her alleged debt," *Id.*, at 656, citing *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005). Finally, the *Foti* court was guided by its concern that a more narrow reading of the term "communication" would "create a significant loophole in the FDCPA," allowing debt collectors to "circumvent . . . provisions of the FDCPA that have a threshold 'communication' requirement." *Id.* at 657.

8

NCCI's conduct was in "connection" with collecting a debt, and the FDCPA applies.

## C. COMMUNICATIONS CAN VIOLATE THE FDCPA EVEN IF THERE IS NO DEMAND FOR PAYMENT

NCCI claims that it was not attempting to collect a debt from plaintiff, because "there must be a communication and that communication **must** be a demand for payment or be made specifically to induce a debtor to settle a debt." Def's Mem., Dkt. #54-4, at 8. This is wrong.

NCCI asserts at ¶¶ 29-32 of its Statement of Material Facts that the Field Representative did not seek payment of any debt, induce payment submission of money owed from a loss mitigation individual, or induce payment, payment options, payment plans, repayment options, or foreclosure options from a loss mitigation individual when engaging in loss mitigation services with the plaintiff. [2] This is a false characterization of the facts.



NCCI representatives send letters, make telephone calls, and make personal visits to a borrower's residence to assist with re-establishing contact between the creditor and borrower and "act as the 'eye and ears' of the creditor in gathering data important to reducing loan losses." Add'l SMF ¶3.

---

[2]       NCCI supports these statements with the affidavit of Rieck, who was never disclosed as a witness, although discovery is closed, and the affidavit of Rick Bellows, who was previously deposed. These affidavits conflict with the documents that Rick Bellows authenticated in his deposition, showing that NCCI's procedures indicate that its Field Representatives indeed do seek to induce payments of debt or submission of money owed by a loss mitigation individuals in connection with mortgages in default and seek to facilitate these debtors entering into payment plans, repayment options, or foreclosure options and did so in Mr. Matmanivong's case. Add'l SMF ¶¶1,2,3,5,6.

████████████████████████████████████████

███████████████████████████████ This is debt collection activity. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).

It is not necessary that the defendant specifically refer to collecting a debt in its communications in order to be acting as a "debt collector." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) (communications regarding possible modification or other resolution of a delinquent mortgage are covered); *Simpson v. Safeguard Properties, LLC*, 2013 WL 2642143, *2 (No. 13 C 2453, June 12, 2013); *Foti v. NCO Financial Systems*, 424 F. Sup.2d 643, 655 (S.D.N.Y. 2006) (finding that defendant's voicemail provided information, even if "indirectly," to the "intended recipient of the message."). Indeed, contacting consumer debtors for the purpose of obtaining information is specifically covered. 15 U.S.C. §1692e(10) (prohibits "[t]he use of any false representation or deceptive means to collect any debt or to obtain information concerning a consumer").

The Court must look at the context surrounding the communications, including the "nature of the parties' relationship." *Gburek*, 614 F.3d at 385. Here, plaintiff has no relationship with the defendant, other than through the services defendant was providing for Bank of America, a company that believed plaintiff's mortgage was in default. NCCI's website clearly states that it provides services for mortgage companies, including making contact with borrowers who are "unable to be reached" to get them to contact the mortgage company.

NCCI's activities are like those that resulted in FDCPA liability in *Gburek, Siwulec,* and *Simpson*, all of which involved contacts with mortgage debtors in default in connection with loss mitigation or field service attempts. They are similar to those of *Horkey v. J.V.D.B. &*

10

*Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003)[3], *Foti v. NCO Financial Systems*, 424

F.Supp.2d 643, 669 (S.D.N.Y. 2006)[4], and *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d

1104 (C.D.Cal.2005)[5], except for the written versus verbal form of communication.

     Other cases in this circuit have also held defendants liable under the FDCPA regarding

communications requesting contact for the purpose of collecting a debt, but not referring to any

debt.[6]

---

[3] The defendant in *Horkey* left a message for the plaintiff with her co-worker, in which he referred to the plaintiff as an "[expletive] bitch." *Horkey*, 333 F.3d at 772. The 7th Circuit found that, one, the message was "'in connection with the collection of a debt' because the undisputed evidence is that [Defendant] called [Plaintiff's] workplace for only one reason: to collect a debt," and, two, that when defendant called the Plaintiff a "bitch," he "was not offering general advice about how [Plaintiff] could improve her disposition. He was telling her, crudely but specifically, to be more receptive to his entreaties regarding the debt…no other interpretation of the facts is reasonable." *Id*. at 774.

[4] In *Foti*, the defendant left pre-recorded voicemail messages for the plaintiff requesting a return call to discuss a "business matter." The Court found that "Defendant's voice message, while devoid of any specific information about any particular debt, clearly provided some information, even if indirectly, to the intended recipient of the message. Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter. Given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call, it is difficult to imagine how the voicemail message is not a communication under the FDCPA." *Id*. at 655-6.

[5] *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F.Supp.2d 1104 (C.D.Cal.2005), another case where a message did not directly reference a debt, but informed the debtor that there was a matter requiring attention and provided a number to call. In *Hosseinzadeh* the court held that, "while the messages may not technically mention specific information about a debt or the nature of the call, § 1692a(2) applies to information conveyed 'directly or indirectly.'" 387 F. Supp.2d at 1116.

[6] See *Pawelczak v.Nations Recovery Center, Inc.*, No. 11 C 3700, 2012 U.S. Dist. 2012 WL 2192263 (N.D.Ill., June 14, 2012) (pre-recorded messages left for debtor that did not identify the source of the call or indicate specifically that their purpose was to collect a debt); *Ramirez v. Apex Financial Mgmt., LLC*, 567 F.Supp.2d 1035, 1041 (N.D.Ill. 2008) (voicemail messages left for a debtor where the messages stated that "there was a matter that [the Plaintiff] should attend to and instructions on how to do so.")

Many other courts have also held that such messages are "communications" within the meaning of 15 U.S.C. §§1692d(6) and 1692e, even if they merely request a return call.[7]

Like the voicemail messages in *Foti* and *Hosseinzadeh*, and the message in *Horkey*, the letters, phone calls, and face-to-face visits here are communications in connection with the collection of a debt, despite not explicitly mentioning any debt. They are clearly designed to get the debtor to communicate with Bank of America. Having one of NCCI's "field representatives" personally visit the debtor at home is inherently intimidating. Indeed, the reason defendant offers this service and promotes it on its website is that a consumer is much more likely to respond to a personally delivered invitation to contact the mortgage company, than one delivered by mail, phone, or other means.

### D. NCCI WAS ACTING AS A DEBT COLLECTOR, NOT AS A COURIER OR MAILING SERVICE

NCCI argues that it was acting as a courier, not as a debt collector. NCCI's instructions to its Field Representatives, as well as its website representations to its customers, indicate that its activities were like those of the defendants in *Siwulec*, *Simpson* and *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998) (discussed below) and hardly that of a

---

[7] *Krapf v. Collectors Training Institute of Illinois, Inc.*, 09-CV-391S, 2010 WL 584020 (W.D.N.Y. February 16, 2010); *Mark v. J. C. Christensen & Assocs.*, 09-100, 2009 U.S.Dist. 2009 WL 2407700 (D.Minn. Aug. 4, 2009); *Wideman v. Monterey Fin. Servs.*, 08-1331, 2009 WL 1292830 (W.D.Pa. May 7, 2009); *Chalik v. Westport Recovery Corp.*, 09-60819-CIV, 677 F.Supp.2d 1322 (S.D.Fla. October 30, 2009); *Inman v. NCO Financial Systems, Inc.*, 2009 WL 3415281 (E.D.Pa. October 21, 2009); *Drossin v. Nat'l Action Fin. Servs.*, 641 F. Supp. 2d 1314 (S.D.Fla. 2009); *Belin v. Litton Loan Servicing, LP*, 8:06-cv-760-T-24 EAJ, 2006 WL 1992410, (M.D.Fla. July 14, 2006); *Knoll v. Allied Interstate, Inc*., 502 F. Supp. 2d 943, 946 (D.Minn. 2007) ("a debt collector violates § 1692d(6) if the collector leaves an answering machine message under an alias and fails to disclose that the call is related to debt collection"); *Knoll v. IntelliRisk Mgmt. Corp.*, Civil No. 06-1211 (PAM/JSM), 2006 WL 2974190, (D.Minn., October 16, 2006) (similar); *Gryzbowski v. I.C. System, Inc.*, 3:cv-08-1884 (M.D.Pa. March 5, 2010).

12

courier or messenger service, such as in *Aquino v. Credit Control Services*, 4 F. Supp2d 927, 930 (N.D. Cal. 1998), or a mailing service, such as in *Trull v. Lason Systems, Inc.*, 982 F. Supp. 600, 607 (N.D. Ill. 1997) or *Laubach v. Arrow Service Bureau*, 987 F. Supp. 625, 629-30 (N.D. Ill. 1997).

[redacted] Exhibit 3 at 1. It is acting as the "'eyes and ears' of the creditor and gathering data important to reducing loan losses." Add'l SMF ¶3, Exhibit 3, p. 11.

[redacted]

Redacted

[redacted]

NCCI claims that it is not a debt collector because it did not own the debt. Def's Mem.

("Def. Mem") at 8. But debt collectors normally do **not** own the debt. Indeed, creditors are

excluded from liability under the FDCPA **unless** the debt is acquired when it is in default.

*Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003); *McKinney v. Cadleway*

*Props., Inc.*, 548 F.3d 496 (7th Cir. 2008). Yet defendant's own website demonstrates its focus

on locating and contacting the debtor. Add'l SMF ¶3,5. Indeed, one of the "loss mitigation"

activities it offers includes skip tracing, a debt collection activity. Add'l SMF ¶7, 8, 9, 10, 11.

NCCI spoke to Mr. Matmanivong, a debtor in default, on the phone, visited his home twice, sent

him at least two letters, and even captured his updated telephone number to report to Bank of

America. Add'l SMF ¶9. These are debt collection activities.

Entities who work for creditors, and communicate with consumers for the purpose of

inducing them to communicate with the creditor, are "debt collectors."[8]

NCCI's communications are similar to those in *Siwulec* and *Safeguard* and go well

---

[8] *Siwulec v. J.M. Adjustment Servs.*, LLC, 465 Fed. Appx. 200 (3d Cir. March 1, 2012)
(not published) (finding that "field agent" service is "no mere messenger service" for debt
collectors because defendant's representatives "are instructed to urge alleged debtors…to call the
creditor"); *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998)
(holding that Western Union was acting as an indirect "debt collector" with its Automated Voice
Telegram service, in which "Western Union obtains debtors' telephone numbers by eliciting
responses to personal delivery telegrams, then disseminates the unlisted numbers to creditors and
collection agencies."); *Simpson v. Safeguard*, (No. 13 C 2453), 2013 WL 2642143, *2, (N.D. Ill.
June 12, 2013)*; Udis v. Universal Communications Co.*, 56 P.3d 1177, 1180-81 (Colo.App.2002)
(following *Romine* and holding defendant liable under the FDCPA for mailing notices "to
hard-to-reach debtors, urging them to call a toll-free number" and marketing this service to
collection agencies.); *Cirkot v. Diversified Fin. Sys.*, 839 F. Supp. 941 (D.Conn. 1993) (where
FDCPA liability was based on the actions of a "Special Investigator" who placed a note in the
plaintiff's mailbox, stating on the envelope "Urgent - Open Immediately" and on the note "Read
my card - I will be handling your case & this area. If you wish not to[,] call 1-800-851-4863
Scott Beatty to settle[.] My special agents will remain in our area to collect. Believe me. Call
within 24 hours.")

beyond those held to make the defendants in *Romine* and *Udis* "debt collector[s]." ███



If attempting to make contact by mail and telephone for the purpose of establishing contact and obtaining information is sufficient to make one an "indirect debt collector," as held in *Romine*, doing the same thing by the far more intimidating means of a personal call on the debtor at his or her home surely is.

## II. PLAINTIFF HAS STANDING

Mr. Matmanivong is not fluent in English. He had a Laotian interpreter at his deposition. Add'l SMF ¶16. His daughter, who speaks fluent English, looks at his mail for him when he asks her to and advises him if something important is in the mail. Add'l SMF ¶16. The fact that Mr. Matmanivong cannot himself read the mail, but uses another person to interpret or convey information to him does not exclude him from the protections of the FDCPA. *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997).

In any event, it is irrelevant whether or not Mr. Matmanivong in fact read or was misled by the October, 2012 letter, because whether language is deceptive or misleading in violation of 15 U.S.C. § 1692e is not based on a debtor's subjective knowledge but, rather, is based on whether the objective "unsophisticated consumer" could have been duped by such language. *Lox v. CDA, Ltd.*, 689 F.3d 818, 820 (7th Cir. 2012); *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991,

15

995 (7th Cir. 2003)("Our test for determining whether a debt collector violated § 1692e is

objective. . . .") ; *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("All that is

required for an award of statutory damages is proof that the statute was violated").

 The Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), provides, in

addition to actual damages, for statutory damages not exceeding $1,000 to consumers who

receive collection letters containing false or deceptive statements.  The damages are recoverable

even if the consumer does not read and is not deceived by the letter. *Bartlett v. Heibl,* 128 F.3d

497 (7th Cir. 1997). Statutory damages are recoverable for such violations, whether or not the

consumer proves actual damages, because the intent of the FDCPA is to encourage consumers to

act as "private attorneys general."[9] *Baker v. G.C. Services Corp.,* 677 F.2d 775, 780-81 (9th Cir.

1982).

 If defendant's argument is correct – notwithstanding the fact that it runs against the

precedent of this Circuit – many federal consumer protection statutes providing for statutory

damages would violate Article III. There is no basis for such an argument. As was held in *Warth*

*v. Seldin*, 422 U.S. 490, 500 (1975), "the actual or threatened injury required by Article III may

exist solely by virtue of statutes creating legal rights, the invasion of which creates standing...."

15 U.S.C. §1692k creates the right to recover statutory damages for violations of the

---

 [9] Numerous federal statutes create "private attorney general" schemes whereby private
parties are given the right to recover statutory damages if a business engages in a prohibited act.
The FDCPA and other such statutes provide for statutory damages because "individual losses, if
any, are likely to be small — a modest concern about privacy, a slight chance that information
would leak out and lead to identity theft. That actual loss is small and hard to quantify is why
statutes such as the Fair Credit Reporting Act provide for modest damages **without proof of
injury**." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (emphasis
added).

FDCPA. Therefore, plaintiff here has standing.

## IV.    NCCI FAILED TO COMPLY WITH §1692g

Since NCCI is a debt collector that communicated with a debtor in connection with the collection of a debt, it was required to send a notice complying with 15 U.S.C. §1692g(a) within five days of its initial communication on with Mr. Matmanivong. ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

There is some dispute about exactly what "FDCPA letter" NCCI sent to Mr. Matmanivong on October 11, 2012. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ This is a clear violation.  15 U.S.C, §1592g(a)(1).

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ Directing inquiry to someone other than the debt collector invites waiver of the rights afforded to a debtor under §1692g and is therefore improper. Language that causes the §1692g notice to be confusing or misleading violates the FDCPA.  *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516 (7th Cir. 1997)(finding that the confusing language ""if the above does not

---

[10] NCCI produced this letter in response to Plaintiff's Rule 37 correspondence dated from December 3, 2013.

apply to you, we shall expect payment or arrangement for payment within ten (10) days from the date of this letter," violated the statute). Where two possible interpretations exist, at least one of which is misleading, a letter is confusing and violates the FDCPA under either the "least sophisticated" or "unsophisticated" consumer standard.[11] *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). *Accord Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000); *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) ("When there are two different accounts of what a debtor actually owes the creditor, that one version is the correct description does not save the other . . . under the unsophisticated debtor standard . . . .").

██████████████████████████████████

██████████████████████████████████

---

[11] *See Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (violation if communication "can be reasonably read to have two or more different meanings, one of which is inaccurate"); *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1062 (9th Cir. 2011)("it is well established that '[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'"); *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 441 (6th Cir. 2008); *Melillo v. Shendell & Assocs., P.A.*, Case No. 11-62048-CIV- COHN/SELTZER, 2012 WL 253205, *13 (S.D.Fla., Jan. 26, 2012) ("[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."); *Nichols v. Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867, (N.D.Ill., March 31, 2006) ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."); *Creighton v. Emporia Credit Serv.*, 3:97CV171, 981 F.Supp. 411, *7 (E.D.Va., May 28, 1997) ("'"a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate."). *See Gionis v. Javitch, Block & Rathbone, LLP,* Nos. 06-3048 & 06-3171, 238 Fed. Appx. 24 (6th Cir., June 6, 2007), aff'g, *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856 (S.D. Ohio, 2005): "Javitch's failure to assert the attorney fees language in the complaint's 'prayer of relief' section does not cure the threat. *See also*, *Chrysler Corp. v. FTC*, 182 U.S. App. D.C. 359, 561 F. 2d 357 (D.C. Cir. 1977) (an advertisement is considered deceptive if it has the capacity to convey misleading impressions to consumers even though non-misleading interpretations may be possible).

████████████████ NCCI 58 states that "Bank of America will assume the debt to be valid." But Bank of America is not the debt collector; NCCI is. The statute requires that the notice state that the debt will be assumed "by the debt collector" to be valid . Otherwise an unsophisticated consumer could believe that everyone will assume it to be valid, including a court or some other entity. *Galuska v. Collectors Training Institute of Illinois, Inc.*, No. 3:07-CV-2044, 2008 WL 2050809 (M.D. Pa. May 13, 2008) (holding that failure to include "by the debt collector" or words such as "we" or "this office" in the required disclosure would lead least sophisticated debtor to believe the debt would be assumed valid by some other entity)

Both of the letters state that ███████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ This is misleading or noncompliant, as the verification must be requested of and come from the entity that sent the notice. Here, that would be NCCI. If a debtor believes it should contact Bank of America and not NCCI, it can contact Bank of America and by the time it realizes that it should have contacted NCCI instead, the 30 days may have passed and its rights to request the information from NCCI waived. A confusing 1692g notice is non-compliant[12]

---

[12] "The statute does not say in so many words [at that time] that the disclosures required by it must be made in a nonconfusing manner. But the courts, our own included, have held, plausibly enough, that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). "A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997).

Both of the letters state "Kindly note, NCCI is not collecting the above referenced debt, nor are we demanding any money," but then further states that "*This communication may be part of an effort to collect a debt, and any information obtained may be used for that purpose.*" The former statement renders the "disclaimer" in the second completely ineffective, as at that point the debtor would have no idea whether a debt collection attempt is occurring or not and what its rights were (those it can assert against a debt collector, those it can assert against a creditor, or those it can assert against a third party who is neither of the above). Cases hold that any contradiction of the §1692g warnings is a violation, and that it is not necessary to establish a violation that the contradiction be "threatening" or visually overshadow the required notice. *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *Adams v. Law Offices of Stuckert & Yates,* 926 F.Supp. 521 (E.D.Pa. 1996); *Flowers v. Accelerated Bureau of Collections,* 96 C 4003, 1997 WL 136313, (N.D.Ill. Mar 19, 1997). In other words, anything that confuses unsophisticated consumers as to their §1692g rights, is sufficient to violate §1692g.

Finally, both letter are misleading in that they state "Any questions you may have regarding the debt should be directed to the contact person of your BofA letter" but then also states that "If you have any questions regarding this notification, please contact NCCI. . . ."

Neither of defendant's FDCPA letters complied with the strictures of §1692g, as explained above, and NCCI has therefore violated the FDCPA. Thus plaintiff is entitled to summary judgment on his Cross Motion for Summary Judgment.

**IV.    CONCLUSION**

For the reasons stated above, plaintiff requests this Court grant his Cross Motion for Summary Judgment and deny NCCI's Motion for Summary Judgment.

20

Respectfully submitted,


s/Catherine A. Ceko
Catherine A. Ceko


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com



<u>**CERTIFICATE OF SERVICE**</u>

       I, Catherine A. Ceko, hereby certify that on September 11, 2014, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which will send electronic notice of such filing to the following counsel on record:

       Jason A. Storipan
       <u>jstoripan@laborlawyers.com</u>

       Nesheba M. Kittling
       <u>nkittling@laborlawyers.com</u>

       Regina A. Petty
       <u>rpetty@laborlawyers.com</u>

       Alice S. Wang
       <u>awang@laborlawyers.com</u>

                        <u>s/ Catherine A. Ceko</u>
                        Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

22