**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOUNLAP MATMANIVONG, | ) | |
| individually and on behalf of a class, | ) | |
| | ) | 13-cv-5347 |
| Plaintiff, | ) | |
| | ) | Judge Matthew F. Kennelly |
| vs. | ) | |
| | ) | |
| NATIONAL CREDITORS CONNECTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

The response of Defendant National Creditors Connection, Inc. ("NCCI") to plaintiff Bounlap Matmanivong's cross-motion for summary judgment attempts to deflect from what is really at issue here: NCCI did not send Plaintiff a compliant 15 U.S.C. §1692g notice. NCCI 's purported §1692g notice fails to comply with the FDCPA and NCCI provided no other compliant notices. As discussed below, plaintiff has standing to pursue his claims whether or not he personally read correspondence from NCCI, NCCI's activities are debt collection activities, and its communications were in connection with the collection of a debt. Thus, this Court should grant plaintiff's cross-motion for summary judgment and deny NCCI's summary judgment motion.

**I.     Plaintiff Has Article III Standing to Bring His FDCPA Claim.**

"To have standing for Article III purposes, a plaintiff must actually have suffered an injury-in-fact at the hands of the defendant." Def's Resp. p. 3. Plaintiff agrees. Defendant spends much time discussing what did not happen in this case - - Plaintiff did not read the letter

NCCI purports to have sent - - but little time discussing what actually *did* occur, i.e. the substance of the letter it sent. NCCI never explains why Plaintiff being deprived of his right under the Fair Debt Collection Practices ("FDCPA") to be notified of certain information regarding his purported debt is not an "injury-in-fact." It is.

Defendant is asking this Court to ignore the Seventh Circuit's holding in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997) that reading a violative letter is *not* a requirement for bringing an FDCPA claim. "If reading were an element of the violation, then Bartlett would have to prove that he read the letter. But it is not. " *Id.* at 499. The Seventh Circuit ordered that judgment be entered in Bartlett's favor. It could hardly have done so if Bartlett did not have constitutional standing to bring his claim in the first place.

Defendant does not even address that it is asking the Court to overturn *Bartlett*. It instead cites to district court opinions regarding Article II standing for the proposition that there must be an "injury-in-fact," completely ignoring the fact that the failure to provide information required by law *is* an "injury-in-fact."

Defendant cites to *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) to support its statement that "This year the Supreme Court appears to have rejected the notion of statutory 'standing' entirely, reframing the question as whether a Plaintiff has a cause of action under the statute at issue." Def.'s Resp. p. 5. One needs to look no further than *Bartlett* to determine that Plaintiff has a cause of action under the FDCPA if he received a violative letter. It is unclear why defendant believes *Lexmark* helps rather than hinders its position, but what is clear is that *Lexmark* only bolsters Plaintiff's position that he has standing in this matter.

2

"Based on the undisputed facts, one would be hard-pressed even to articulate a 'legal right' of Plaintiff that has been 'invaded' without sounding absurd." Def.'s Resp. p. 7.  No, what is absurd is the notion that unless a plaintiff has actual damages, he lacks standing under Article III to bring suit under the FDCPA. This obliterates the entire notion of statutory damages, well established under the law, as well as the clear principle under *Bartlett* that violating an individual's legal rights under 1692g is enough, in and of itself, to create a claim.  The Seventh Circuit just reaffirmed this position in *Sterk v. Redbox Automated Retail, LLC*, No. 13-3037, 2014 WL 5369416, at *3 (7th Cir. Oct. 23, 2014)("Congress does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.' *Kyle v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 294 (7th Cir. 2000)"). Alleging violation of a statute creates the "injury-in-fact" required for Article III standing.  *Id*. at *3.  NCCI's position here attempts to stand this principle and the law on its head, and this Court should reject it.

## II.    TARP DOES NOT PRE-EMPT PLAINTIFF'S FDCPA CLAIM

NCCI flatly asserts that "TARP and the FDCPA serve separate, opposite, and competing goals: the specific purpose of maintaining home ownership in the case of the former, and the general function of controlling debt collection practices in the case of the latter."  Def.'s Mem. p. 8.  Defendant never explains *why* the two allegedly serve opposite or competing goals.  It is unclear to Plaintiff why maintaining home ownership is an opposite or competing goal to prohibiting debt collection abuses.  Taking improper foreclosure-related activity violates the FDCPA.  *Frazier v. U.S. Bank Nat'l Assn.*, No. 11 C 8775, 2013 WL 1337263, at *10 (N.D. Ill. Mar, 29, 2013); *Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449, at *1-2 (N.D.

Ill. Aug. 8 2012). The FDCPA specifically prohibits "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (a) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (b) there is no present intention to take possession of the property; or (c) the property is exempt by law from such dispossession or disablement." 15 U.S.C. §1692f(6). In light of this, it is unfounded to suggest that the FDCPA is "opposite to" and "competing" with the goal of maintaining home ownership.

TARP does not supersede the FDCPA. "One federal statute does not preempt another. . . When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed. . . . It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other." *Randolph v. IMBS, Inc.* 368 F.3d 726, 730 (7th Cir. 2004). Here, there was no such intent and there is no such irreconcilable conflict. Defendant demonstrates no conflict - - it does not even pretend to suggest a way in which the two conflict at all, much less in this scenario - - nor does it demonstrate any Congressional intent to prohibit FDCPA actions against mortgage servicers that fall under TARP.

The Consumer Financial Protection Bureau ("CFPB") disseminated guidance for mortgage servicers on how to balance various statutes relating to mortgagors. Implementation Guidance for Certain Mortgage Servicing Rules, CFPB Bulletin 2013-12, attached hereto as Exhibit A. One of three topics addressed therein was "Servicers' obligation to provide certain notices/communications to borrowers who have exercised their right under the Fair Debt Collection Practices Act (FDCPA) barring debt collectors from communicating with them." *Id.* at

4

1.   "The CFPB concludes that the FDCPA 'cease communication' option does not generally

make servicers that are debt collectors liable under the FDCPA if they comply with certain

provisions of Regulation X (12 CFR 1024.35 (error resolution), 1024.36 (requests for

information), 1024.37 (force-placed insurance), and 1024.41 (loss mitigation)) and

Regulation Z (12 CFR 1026.20(d) (adjustable-rate mortgage (ARM) initial interest rate

adjustment) and 1026.41 (periodic statement))." *Id.* at 6. If, as Defendant suggested, TARP

superseded the FDCPA, the CFPB would have absolutely no reason to waste its time

disseminating a bulletin clarifying certain instances in which servicers' loss mitigation conduct

will not fall under the FDCPA.  One does not make carve-outs to rules that are inapplicable in

the first instance.  The very fact that the CFPB carved out certain servicer conduct from FDCPA

liability demonstrates that, generally, all of the mortgage servicing statutes operate in tandem

with the FDCPA, not as a trump card over it.

## III.   LOSS MITIGATION ACTIVITIES ARE COMMUNICATIONS IN CONNECTION WITH THE COLLECTION OF A DEBT

Despite its repeated contentions to the contrary, NCCI's loss mitigation activities are

clearly "in connection with the collection of any debt."  "In connection with" is an extremely

"broad" and "expansive" phrase.  *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996).[1]

Defendant asserts that "NCCI's communication with Plaintiff was in connection with collecting

paperwork for loss mitigation purposes to help preserve and maintain his home."  Def.'s Resp. p.

9.  "Loss mitigation" is simply a fancy way for mortgage servicers to say "we will work with you

---

[1] Defendant asserts that Plaintiff's citation to *Wyatt* is inexplicable.  *Wyatt* is not an FDCPA case, but quite clearly sets forth how the phrase "in connection with" shall be interpreted.

so that you start paying us again, because we really need you to start paying us again." The goal is a purely business one: getting non-performing loans to perform. The loss that the servicer is attempting to mitigate is its own loss of accounts and revenue, not the borrower's loss of his home.

NCCI lists the three factors *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) gives for determining whether a communication is made in connection with the collection of a debt, Def.'s Resp. p. 10, but then goes on to give a self-serving and inaccurate portrayal of the facts to assert that Plaintiff does not meet these factors. Def.'s Resp. pp 10-11. NCCI asserts that "the undisputed facts establish that NCCI never made a demand for payment." Def.'s Resp. p. 10. They establish no such thing. There is no explicit demand for payment, no. But the entire purpose of NCCI's contact with Plaintiff is "loss mitigation," i.e. to get him to start paying on his loan again. This is an implicit demand for payment. Further, the *Gburek* court made it crystal clear that a lack of demand for payment is by no means a dispositive factor. *Gburek*, 614 F.3d at 385 ("[T]he absence of a demand for payment is just one of several factors that comes into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt.")

Regarding the second *Gburek* factor, just as in *Ruth v. Triump Partnerships*, 577 F.3d 790 (7th Cir. 2009), quoted by *Gburek,* "[t]he only relationship the defendants had with the plaintiffs arose out of . . . the plaintiffs' defaulted debt." *Gburek*, 614 F.3d at 385, *quoting Ruth*, 577 F.3d at 799. NCCI's function of "loss mitigation" does not occur unless a loan is in default. The only time NCCI interacted with Plaintiff was *after* Plaintiff's debt was in default, just as in *Ruth*.

NCCI attempts to compare the instant case to *Bailey v. Security National Servicing Corp.,* 154 F.3d 384 (7th Cir. 1998). There is no comparison. In *Bailey*, the defendants there were not collecting on a debt in default. They were seeking to collect payments under a forbearance agreement upon which the Baileys were current, *not* on the original note, which was in default. *Id*. At 387-88. Further, the letter was not in connection with the collection of any debt because it only lists prospective due dates for payments on a payment plan upon which the Baileys were *current*. *Id.* at 388-89. In no respect is *Bailey* similar to our situation here. Here, the debt was in default and the communications between NCCI and Plaintiff were designed to reach the end result of Plaintiff making payments on his mortgage loan. This is clearly behavior "in connection with the collection of any debt."

The third *Gburek* factor is "the purpose and context of the communication." *Gburek*, 577 F.3d at 385.



Add'l SMF ¶2, Exhibit 3 at 1. It is acting as the

Add'l SMF ¶3, Exhibit 3, p. 11. NCCI's website clearly states that it provides services for mortgage companies, including making contact with borrowers who are "unable to be reached" to get them to contact the mortgage company. How an entity holds itself out publicly and to potential clients is highly relevant in determining its real business purpose. *Siwulec v. J.M. Adjustment Servs.*, LLC, 465 Fed. Appx. 200, 204 (3d Cir. March 1, 2012).

NCCI's activity is "in connection with the collection of any debt," because, as explained

above, the whole purpose of NCCI's loss mitigation efforts is to turn a non-performing loan into

a performing one, i.e. to have Plaintiff make payments on his mortgage. NCCI's contact with

Mr. Matmanivong was in connection with the collection of his mortgage loan, and this Court

should grant summary judgment in Mr. Matmanivong's favor and deny NCCI's motion for

summary judgment.

## IV.    PLAINTIFF'S CLAIM CAN BE DECIDED ON SUMMARY JUDGMENT

NCCI states that whether its collection letter[2] to Plaintiff violates 15 U.S.C. §1692g is "a

question of fact that cannot be resolved on a summary judgment motion." Def.'s Resp. p. 14.

This is not true. First, NCCI is incorrect in stating that the only basis for Plaintiff's §1692g

claim is that the letter was confusing and misleading. The letter that NCCI's legal counsel, R,G.

Bellows, stated in his deposition was the FDCPA letter NCCI sent Plaintiff - - <u>Appendix 3</u> to

Plaintiff's Statement of Material Facts - - does not comply with the FDCPA because instead of

stating the amount of the debt, it says ~~Redacted~~ This is a clear, facial violation

of §1692g that does not rely on the letter being confusing or misleading but, rather, the plain

language of the letter itself. 15 U.S.C, §1692g(a)(1). Such violations are those upon which

summary judgment are appropriately granted. *Miller v. McCalla,* 214 F.3d 872, 875 (7th Cir.

2000)(holding that requiring the debtor to call the debt collector to obtain the amount of the debt

was a violation of §1692g); *McCabe v. Crawford & Co.*, 272 F.Supp.2d 736, 743-44, FN 11

(N.D. Ill. 2003); *Crafton v. Law Firm of Jonathan B. Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis.

---

[2] There is some confusion (on NCCI's part) about exactly what "FDCPA letter" NCCI sent to Mr. Matmanivong on October 11, 2012. Initially, NCCI asserted that the letter attached to the Amended Complaint as Appendix B (NCCI 58) was sent to Mr. Matmanivong. At his deposition, NCCI's legal counsel, R,G. Bellows, stated that the documents at NCCI/BM 668 and 667 are the front and back of the "FDCPA letter" sent. (Appendix 3). Add'l SMF ¶10, 15.

2013).

NCCI goes on to state that no summary judgment may be granted in Plaintiff's favor

without "evidence as 'testimony' and 'consumer surveys.'" Def.'s Resp. p. 14. This is an

incorrect characterization of Seventh Circuit law on this subject. "[I]f a collection letter violates

the FDCPA on its face, then no survey evidence is needed to decide the issue as a matter of law

. . . However, if the collection letter is not confusing on its face, but may be confusing to those

who read it, then summary judgment is inappropriate to decide the issue." *McCabe*, 272

F.Supp.2d at 745-46; *Holt v. Wexler*, No. 98 C 7285, 2002 WL 475181, at *8 (N.D. Ill. Mar. 28,

2002); *Matthews v. First Revenue Assurance, L.L.C.*, No. 00 C 3711, 2001 WL 864272, at *3

(N.D. Ill. July 31, 2001); *Smith v. Short Term Loans, L.L.C.*, No. 99 C 1288, 2001 WL 127303,

at *10 (N.D. Ill. Feb. 14, 2001). As this Court explained, this makes sense in light of the lens

through which we are supposed to view these things; if a letter is confusing to a federal judge, it

is necessarily confusing to an unsophisticated consumer; on the other hand, as Judge Easterbrook

noted, 'what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone

whose formal education ended after sixth grade.'" *Matthews*, 2001 WL 864272, at *3, *quoting*

*Walker v. Nat'l Recovery Inc.*, 200 F.3d 500, 501 (7th Cir. 1999).

Here, both letters (Appendix 3 and NCCI 58) are misleading in that they state " ███

██████████████████████████████████████████████████████████

████████ " Directing inquiry to someone other than the debt collector invites waiver of the

rights afforded to a debtor under §1692g and is therefore improper.

Language that causes the §1692g notice to be confusing or misleading violates the

FDCPA. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997)(finding that the

confusing language ""if the above does not apply to you, we shall expect payment or

arrangement for payment within ten (10) days from the date of this letter," violated the statute).

Where two possible interpretations exist, at least one of which is misleading, a letter is confusing

and violates the FDCPA under either the "least sophisticated" or "unsophisticated" consumer

standard.[3] *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). *Accord Wilson v.

Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000); *See Veach v. Sheeks*, 316 F.3d 690, 693

(7th Cir. 2003) ("When there are two different accounts of what a debtor actually owes the

creditor, that one version is the correct description does not save the other . . . under the

unsophisticated debtor standard . . . .").

Here, the confusing and misleading nature of the letter is unmistakable. Appendix 3

---

[3] *See Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d
Cir. 2008) (violation if communication "can be reasonably read to have two or more different
meanings, one of which is inaccurate"); *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055,
1062 (9th Cir. 2011)("it is well established that '[a] debt collection letter is deceptive where it
can be reasonably read to have two or more different meanings, one of which is inaccurate.'");
*Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 441 (6th Cir. 2008);
*Melillo v. Shendell & Assocs., P.A.*, Case No. 11-62048-CIV- COHN/SELTZER, 2012 WL
253205, *13 (S.D.Fla., Jan. 26, 2012) ("[a] debt collection letter is deceptive where it can be
reasonably read to have two or more different meanings, one of which is inaccurate."); *Nichols v.
Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867, (N.D.Ill.,
March 31, 2006) ("[A] collection notice is deceptive when it can be reasonably read to have two
or more different meanings, one of which is inaccurate."); *Creighton v. Emporia Credit Serv.*,
3:97CV171, 981 F.Supp. 411, *7 (E.D.Va., May 28, 1997) (""a collection notice is deceptive
when it can be reasonably read to have two or more different meanings, one of which is
inaccurate."). *See Gionis v. Javitch, Block & Rathbone, LLP,* Nos. 06-3048 & 06-3171, 238 Fed.
Appx. 24 (6th Cir., June 6, 2007), aff'g, *Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d
856 (S.D. Ohio, 2005): "Javitch's failure to assert the attorney fees language in the complaint's
'prayer of relief' section does not cure the threat. *See also*, *Chrysler Corp. v. FTC*, 182 U.S.
App. D.C. 359, 561 F. 2d 357 (D.C. Cir. 1977) (an advertisement is considered deceptive if it has
the capacity to convey misleading impressions to consumers even though non-misleading
interpretations may be possible).

states that ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████ NCCI 58

states that ██████████████████████████████████ But Bank of America is not the

debt collector; NCCI is. The statute requires that the notice state that the debt will be assumed

"by the debt collector" to be valid.  Otherwise an unsophisticated consumer could believe that

everyone will assume it to be valid, including a court or some other entity.  *Galuska v. Collectors*

*Training Institute of Illinois, Inc.*, No. 3:07-CV-2044, 2008 WL 2050809 (M.D. Pa. May 13,

2008) (holding that failure to include "by the debt collector" or words such as "we" or "this

office" in the required  disclosure would lead least sophisticated debtor to believe the debt would

be assumed valid by some other entity)

Both of the letters state that ███████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ This is misleading or noncompliant, as the verification must

be requested of and come from the entity that sent the notice. Here, that would be NCCI. If a

debtor believes it should contact Bank of America and not NCCI, it can contact Bank of America

and by the time it realizes that it should have contacted NCCI instead, the 30 days may have

passed and its rights to request the information from NCCI waived.  "A notice is overshadowing

or contradictory if it would make the least sophisticated consumer uncertain as to her rights."

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *Chauncey v. JDR Recovery Corp.*, 118 F.3d

516 (7th Cir. 1997).

Both of the letters state ███████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████ The

former statement renders the "disclaimer" in the second completely ineffective, as at that point

the debtor would have no idea whether a debt collection attempt is occurring or not and what its

rights were (those it can assert against a debt collector, those it can assert against a creditor, or

those it can assert against a third party who is neither of the above). Cases hold that any

contradiction of the §1692g warnings is a violation, and that it is not necessary to establish a

violation that the contradiction be "threatening" or visually overshadow the required notice.

*Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996); *Chauncey*, 118 F.3d at 518; *Matthews*, 2001

WL 864272, at *1.  In other words, anything that confuses unsophisticated consumers as to their

§1692g rights, is sufficient to violate §1692g.

 Finally, both letters are misleading in that they ██████████████████████████████

██████████████████████████████████████████ but then also

states that "███████████████████████████████████████████

 Neither of defendant's FDCPA letters complied with the strictures of §1692g, as

explained above, and NCCI has therefore violated the FDCPA.  Thus plaintiff is entitled to

summary judgment on his Cross Motion for Summary Judgment.[4]

---

[4] In its Response to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts, NCCI inappropriately requests that Plaintiff's Statement of Additional Facts be Stricken. A response to a Statement of Facts is not a motion, and no request for any relief, least of all something as drastic as striking a party's statement of facts, is appropriately made in such a response.  If NCCI wished for the Court to strike Plaintiff's Statement of Additional Facts, it should have filed and noticed a motion to do so, which would have afforded Plaintiff an opportunity to respond to this baseless request.  Therefore, if the Court does entertain Defendant's request to strike Plaintiff's Statement of Additional Facts, even though inappropriately brought, Plaintiff would request that this Court first allow Plaintiff to file a response to that request.

IV.    **CONCLUSION**

For the reasons stated above, plaintiff requests this Court grant his Cross Motion for

Summary Judgment and deny NCCI's Motion for Summary Judgment.


Respectfully submitted,

s/Catherine A. Ceko
Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ćeko
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

13

## CERTIFICATE OF SERVICE

I, Catherine A. Ceko, hereby certify that on November 3, 2014, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which will send electronic notice of such filing to the following counsel on record:

Jason A. Storipan
jstoripan@laborlawyers.com

Nesheba M. Kittling
nkittling@laborlawyers.com

Regina A. Petty
rpetty@laborlawyers.com

Alice S. Wang
awang@laborlawyers.com

s/Catherine A. Ceko
Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ćeko
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX) (may use for service of pleadings)
Email address for service: courtecl@edcombs.com

14