IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOUNLAP MATMANIVONG, individually and on behalf of a class, Plaintiff, v. NATIONAL CREDITORS CONNECTION, INC., Defendant. | Civil Action No. 1:13-cv-05347<br><br>Judge Kennelly |

**DEFENDANT'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant National Creditors Connection, Inc. ("NCCI") submits this sur-reply pursuant to the Court's December 1, 2014 Order (Doc. 88). The undisputed facts and the controlling law show that Plaintiff lacks constitutional standing; that NCCI may not be held liable under the Fair Debt Collection Practices Act ("FDCPA") for its compliance with the Troubled Asset Relief Program ("TARP"); and that NCCI made no communication with Plaintiff "in connection with the collection of any debt," which is a prerequisite for liability on Plaintiff's FDCPA claim. The Court should accordingly grant NCCI's summary judgment motion, dismiss the Amended Complaint with prejudice, and deny Plaintiff's cross-motion.

**I.     Plaintiff Lacks Constitutional Standing Because He Experienced No Injury-in-Fact.**

Plaintiff's sole claim is that NCCI sent him a letter that did not comply with FDCPA §809, 15 U.S.C. §1692g. (Am. Compl., Doc. 40, ¶31.) Plaintiff admits he "never opened" the letter, "never read" the letter, and was "not misled" by the letter. (Pl.'s Resp. pp.10-11 ¶¶51-

53.[1]) Plaintiff nevertheless insists he was "injured-in-fact" by the letter and so has standing under Article III of the Constitution. (Pl.'s Reply at 1-2.) It is no surprise that none of the authorities Plaintiff relies on supports his proposition.

First, Plaintiff says that to hold he lacks Article III standing would be "to ignore the Seventh Circuit's holding in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997)." (Pl.'s Reply at 2.) *Bartlett*, however, does not address or even mention standing "and so is not a precedent on the jurisdictional issue presented by the present case." *Fincher v. S. Bend Hous. Auth.*, 578 F.3d 567, 568 (7th Cir. 2009). Accordingly, *Bartlett* is not relevant.

Second, Plaintiff contends that *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), "bolsters Plaintiff's position that he has standing in this matter." (Pl.'s Reply at 2.) It does not. In *Lexmark*, the Court had to determine whether the counterclaimant had "a cause of action under the statute" at issue, noted it had "on occasion referred to this inquiry as 'statutory standing,'" but then concluded that such terminology is "misleading, since the absence of a valid ... cause of action does not implicate subject-matter jurisdiction." *Lexmark*, 134 S. Ct. at 1388 & n.4. Article III standing, which Plaintiff lacks here, was not at issue in *Lexmark*. *See id.* at 1386. Like *Bartlett*, *Lexmark* is not relevant.

Finally, Plaintiff quotes *Sterk v. Redbox Automated Retail, LLC*, which says "Congress does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute,'" 770 F.3d 618, 2014 U.S. App. LEXIS 20505, at *9 (7th Cir. 2014) (quoting *Kyles v. J.K. Guardian Sec. Servs, Inc.*, 222 F.3d

---

[1] "Pl.'s Resp." refers to the unredacted version of Plaintiff's Response to Defendant National Creditors Connection, Inc.'s L.R. 56.1 Statement of Facts and Statement of Additional Material Facts. "Pl.'s Reply" refers to the unredacted version of the Reply in Support of Plaintiff's Cross-Motion for Summary Judgment. "Facts" refers to the Statement of Undisputed Material Facts in Support of Defendant NCCI's Motion for Summary Judgment, Doc. 54-1.

FPDOCS 30273036.1

289, 294 (7th Cir. 2000)). That is true, but it is not a complete description of the Supreme Court's standing doctrine. The original source of the quotation is in *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973). *See Kyles*, 222 F.3d at 294. In its discussion of *Linda R.S.* in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that Congress may elevate "to the status of legally cognizable injuries, *concrete, de facto injuries* that were previously inadequate in law," which "is a different matter from abandoning the requirement that the party seeking review must himself *have suffered an injury*." *Lujan*, 504 U.S. at 578 (emphasis added). The plaintiffs' injury in *Sterk* illustrates this distinction: the defendant there had disclosed the plaintiffs' "sensitive personal information" to a third party. 2014 U.S. App. LEXIS 20505, at *8-9. Here, on the other hand, Plaintiff admits he "never opened" the letter he is suing over, "never read" the letter, and was "not misled" by the letter. Plaintiff, in other words, did *not* suffer a "concrete, de facto" injury, which according to the Supreme Court is necessary for him to have Article III standing and for this Court to have subject matter jurisdiction. NCCI's summary judgment motion should accordingly be granted, and the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

**II.    NCCI Cannot Be Liable Under the FDCPA for Complying with TARP.**

Plaintiff seeks to hold NCCI liable under the FDCPA for communications with him required by TARP. (Def.'s Br., Doc. 54-4, at 3-7.) The law does not permit parties to be put in such damned-if-you-do/damned-if-you-don't situations. Instead, TARP, the later-enacted statute, whose specific purpose is to promote and maintain home ownership, "supercedes" the earlier FDCPA, whose more general purpose is to govern debt collection activities. (Def.'s Reply Br., Doc. 72, at 7-8.) *See, e.g., Strackbein v. Wynne*, 282 F. App'x 443, 447 (7th Cir.

2008) ("Specific statutes supercede general statutes and a later enacted statute may limit the scope of an earlier statute"); *accord, e.g., Tyler v. Douglas*, 280 F.3d 116, 123-24 (2d Cir. 2001).

The authorities Plaintiff cites (Pl.'s Reply at 4-5) are not to the contrary. *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), holds that one statute does not "implicitly repeal" another "when the two statutes are consistent," "[i]t is easy to enforce both statutes" simultaneously, and "as long as people can comply with both," *id.* at 728, 730, 731. But Plaintiff's lawsuit shows that as applied here, the statutes at issue are not consistent, since Plaintiff claims that NCCI's compliance with TARP constitutes a violation of the FDCPA. Therefore, the later-enacted, specific TARP supercedes the earlier, more general FDCPA.

The Consumer Financial Protection Bureau ("CFPB") Bulletin 2013-12 ("Bulletin," Ex. A to Pl.'s Reply) is intended to protect debt collectors from liability under the FDCPA's "cease communication" provision, 15 U.S.C. §1692k(e), for complying with the communication requirements of regulations issued under the Real Estate Procedures Act ("RESPA") and Truth in Lending Act ("TILA"), as revised by the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). Bulletin pp.6-7. The Bulletin explains that "a [mortgage loan] servicer that is considered a debt collector under the FDCPA" and continues to communicate with a borrower pursuant to RESPA and TILA regulations even after a borrower's FDCPA "cease communication" instruction "is not liable under the FDCPA." Bulletin p.6. No FDCPA liability can arise from communications "specifically mandated" by the Dodd-Frank Act, "which makes no mention of their potential cessation under the FDCPA and presents a more recent and specific statement of legislative intent ... than does the FDCPA." *Id.* at 7. Thus, the Bulletin relied on by Plaintiff confirms NCCI's position: NCCI cannot be held liable under the

4

earlier, general FDCPA for complying with later, specific TARP. For this reason, too, the Court should grant NCCI's motion and dismiss the Amended Complaint with prejudice.

**III.    NCCI Made No Communication with Plaintiff "in Connection with the Collection of Any Debt."**

To prevail, Plaintiff must prove that NCCI's initial communication with him was made "in connection with the collection of any debt." 15 U.S.C. §1692g(a); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). (Def.'s Reply Br. at 9.) In the Seventh Circuit, courts consider three factors in determining if a communication by a debt collector was made "in connection with the collection of any debt": (1) "the absence of a demand for payment"; (2) "[t]he nature of the parties' relationship"; and (3) "the purpose and context of the communication[]." *Gburek*, 614 F.3d at 385.

Taking these factors in order, first, Plaintiff admits there was "no explicit demand for payment," but asserts there was some sort of "implicit demand for payment." (Pl.'s Reply at 6.) This contradicts Plaintiff's own testimony. According to Plaintiff himself, all that happened here is that he telephoned NCCI on October 9, 2012; an NCCI field representative left Bank of America documents for him on October 11; NCCI sent Plaintiff the letter that is the subject of this action on October 12; and NCCI field representatives picked up documents from Plaintiff on October 16. (Pl.'s Stmt. pp.13-14 ¶¶8-11.) NCCI was thus acting as a courier service, not making communications in connection with the collection of a debt.

Second, Plaintiff says the "only relationship" between him and NCCI arose out of his "defaulted debt." (Pl.'s Reply at 6, quoting *Gburek*, 614 F.3d at 385.) But that just begs the question, since the FDCPA "does not apply to *every* communication between a debt collector and a debtor." *Gburek*, 614 F.3d at 384-85. The undisputed fact is that NCCI was not hired to collect a debt from Plaintiff, but merely to pick up a package of documents from him and send

5

them on to Bank of America.  That was the full extent of the parties' "relationship."  (Facts ¶¶7, 9, 14-25, 28-32, 49; Pl.'s Stmt. pp.13-14 ¶¶8-11; Def.'s Reply Br. at 10.)

Finally, Plaintiff argues that NCCI "holds itself out publicly" as a debt collector.  (Pl.'s Reply at 7.)  That argument, however, is beside the point.  Plaintiff must prove *both* that NCCI is a "debt collector" under the FDCPA, *see* 15 U.S.C. §1692a(6), *and* that "the communication ... that forms the basis of the suit [was] made 'in connection with the collection of any debt,'" *Gburek*, 614 F.3d at 384.  (*See also* Def.'s Reply Br. at 9, 12-13 & n.6.)  Even assuming Plaintiff can prove the former, he cannot prove the latter:  Again, all NCCI did here was pick up documents from Plaintiff and send them on to Bank of America.  NCCI made no communications with Plaintiff in connection with the collection of a debt.  (*See* Def.'s Reply Br. at 11-12.)  For this reason, too, the Court should grant NCCI's summary judgment motion and dismiss the Amended Complaint with prejudice.

## Conclusion

For the reasons set forth above and in NCCI's previous submissions, the Court should grant its summary judgment motion, dismiss the Amended Complaint, in its entirety, with prejudice, and deny Plaintiff's cross-motion.

DATED:  December 9, 2014

Respectfully Submitted,
By: /s/ Jason A. Storipan
JASON A. STORIPAN
For FISHER & PHILLIPS LLP
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Telephone:  (908) 516-1050
Fax:  (908) 516-1051
jstoripan@laborlawyers.com
Attorneys for Defendant
National Creditors Connection, Inc.